UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KHAIRULDEEN MAKHZOOMI,<br><br>         Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., et al.,<br><br>         Defendants. | Case No. 18-cv-00924-DMR<br><br>**ORDER ON MOTION TO DISMISS<br>AND MOTION FOR JUDGMENT ON<br>THE PLEADINGS**<br><br>Re: Dkt. Nos. 34, 35 |

Plaintiff Khairuldeen Makhzoomi filed a complaint against Southwest Airlines Co. ("Southwest") and Shoaib Ahmed, a Southwest employee, alleging violations of state and federal laws based upon his April 2016 removal from a Southwest flight prior to takeoff. Ahmed now moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss four of Makhzoomi's claims. [Docket No. 34.] Southwest moves pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings as to the same four claims. [Docket No. 35.] These motions are suitable for resolution without a hearing. Civ. L.R. 7-1(b). For the following reasons, Ahmed's motion to dismiss is granted in part and denied in part. Southwest's motion for judgment on the pleadings is denied.

## I. BACKGROUND

Makhzoomi makes the following allegations in the complaint, all of which are taken as true for purposes of this motion.[1] Makhzoomi is an Iraqi refugee and American citizen. On April 6, 2016, he was sitting in his seat aboard a Southwest flight from Los Angeles to Oakland. Compl. ¶¶ 1, 14. At the time, Makhzoomi was a student at the University of California, Berkeley

---

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

and had just attended "a special invite-only event" where he met former United Nations Secretary General Ban Ki-moon. *Id.* at ¶ 15. While waiting for the flight to complete boarding before takeoff, Makhzoomi was speaking on his cell phone with his uncle in Arabic, which is his native language. Makhzoomi alleges that he "was excited to share with his uncle" that he had met Ban Ki-Moon "and even asked a question about the secretary's plans to combat the Islamic State." *Id.* at ¶¶ 17, 18.

Shortly thereafter, Defendant Ahmed, a Southwest employee, along with two police officers, approached Makhzoomi and removed him from the plane in front of the remaining passengers. *Id.* at ¶ 19. Makhzoomi alleges that after Ahmed attempted to speak with Makhzoomi in Arabic, Makhzoomi asked him to speak in English. *Id.* at ¶ 25. The two then had the following exchange:

> Defendant Ahmed . . . admonished [Makhzoomi] for speaking in Arabic on an airplane, given the current political climate, saying "You seem that you were having a serious conversation on the phone. Who were you talking to?" to which [Makhzoomi] explained he was talking to his uncle about the conference the night before, and the agent reacted, "Why are you talking in Arabic? [Y]ou know the environment is very dangerous".

*Id.* at ¶ 26. The allegations make a vague reference to a "complaint" made by someone about Makhzoomi: he alleges that "Southwest did nothing to verify or even slightly corroborate the complaint they received regarding [Makhzoomi] to determine that it was genuine, authentic, and not the result of racial bias and Islamophobia," and instead removed him from the plane and "berated him for speaking in Arabic." *Id.* at ¶ 66. According to Makhzoomi, "Ahmed . . . made it clear to [him] that he was being removed from the plane for speaking in Arabic." *Id.* at ¶ 27.

Makhzoomi obeyed the law enforcement officers' demands and deplaned, and the flight departed without him. *Id.* at ¶ 20. After deplaning, Makhzoomi entered the terminal "and [was] made to stand in a corner for 45 minutes before being aggressively patted down and invasively searched in front of a crowd of onlookers and half a dozen police officers, including a K-9 unit." *Id.* at ¶ 28. He felt "humiliated, in shock, confused, and began to silently cry." *Id.* at ¶ 29. FBI agents then took him to a private room where they interrogated him and searched his belongings. *Id.* at ¶ 30. Makhzoomi was finally cleared and released after "hours of questioning, searching,

and pleading innocence." *Id*. at ¶ 32. One FBI agent "confirmed that [Makhzoomi's] removal was due to his speaking on the phone in Arabic," telling Makhzoomi, "Well, I think you're done with Southwest. Next time you are flying, don't use your phone, just sit there, and I advise you to apologize to Southwest." *Id*. at ¶ 31.

Southwest refunded Makhzoomi's ticket but refused to let him book travel on another Southwest flight, even though he had "been cleared by local law enforcement *and* the FBI" and Southwest was "aware that [Makhzoomi] was actually not a threat." *Id*. at ¶¶ 33, 53 (emphasis in original). He was ultimately forced to book a ticket on a different airline to get home. *Id*. at ¶ 34.

Makhzoomi alleges upon information and belief that "no Southwest personnel had observed any suspicious or concerning activity" by Makhzoomi, and no Southwest agent ever "perform[ed] even the slightest, most cursory questioning into whether [he] was a security threat." *Id*. at ¶ 21. He further alleges that "[n]o passenger or agent of Southwest actually observed any safety concerns or contentious communications with [Makhzoomi], let alone any altercations or reasons to cause concern, except for the fact that [Makhzoomi] appeared to be Middle Eastern or Muslim." *Id*. at ¶ 48. Before being escorted off the plane, no Southwest personnel "ask[ed] [Makhzoomi] what he was doing, who he was talking to, why, or what about[.]" *Id*. at ¶ 22.

Makhzoomi alleges the following claims against Defendants: 1) 42 U.S.C. § 1981 claim for discrimination; 2) violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; 3) violation of California's Unruh Civil Rights Act, California Civil Code section 51; 4) negligence; and 5) intentional infliction of emotional distress.

Ahmed moves to dismiss claims two through five. Southwest moves for judgment on the pleadings on claims three through five.[2]

## II.    AHMED'S MOTION TO DISMISS

### A.  Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

---

[2] Neither motion challenges Makhzoomi's claim for relief for violation of 42 U.S.C. § 1981.

When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94 (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

### B. Discussion

#### 1. Federal Aviation Act Preemption

Ahmed moves to dismiss Makhzoomi's three state law claims on the ground that they are preempted by the Federal Aviation Act ("FAA"), 49 U.S.C. § 40103 *et seq*. The FAA provides that air carriers "may refuse to transport a passenger or property the carrier decides is, or might be, inimical to safety." 49 U.S.C. § 44902(b). Ahmed argues that Makhzoomi's state law claims are preempted by section 44902(b) because Southwest removed him from the flight due to "safety concerns." Mot. 6.

In *Montalvo v. Spirit Airlines*, 508 F.3d 464, 470-73 (9th Cir. 2007), the Ninth Circuit examined the purpose, history, and language of the FAA and concluded that "Congress intended to have a single, uniform system for regulating aviation safety." The court held that the FAA and the relevant federal regulations promulgated by the Federal Aviation Administration preempted state law claims based on airlines' failure to warn air passengers of the danger of developing deep vein thrombosis "because the FAA preempts the entire field of aviation safety through implied field preemption." *Id*. at 468, 472-73. Two years later, the Ninth Circuit "circumscribed the

preemptive effect of the FAA" in *Martin ex rel. Heckman v. Midwest Express Holdings, Inc.*, 555 F. 3d 806, 811 (9th Cir. 2009). *Ventress v. Japan Airlines*, 747 F.3d 716, 721 (9th Cir. 2014) (discussing Ninth Circuit authority on FAA preemption). In *Martin*, the court clarified that *Montalvo* "means that when the agency issues 'pervasive regulations' in an area, like [the] passenger warnings [at issue in *Montalvo*], the FAA preempts all state law claims in *that* area." 555 F.3d at 811 (emphasis in original); *see Ventress*, 747 F.3d at 721 (discussing *Martin*). However, "[i]n areas without pervasive regulations or other grounds for preemption, the state standard of care remains applicable." *Martin*, 555 F.3d at 811. The court held that state tort claims involving airplane stairs were not preempted by federal law because there were no federal aviation regulations governing that aspect of airplane design. *Id*. at 812.

Finally, in *Ventress*, the Ninth Circuit considered whether an airline pilot's state law retaliation and constructive termination claims based on his reporting safety concerns about a fellow pilot were preempted by the FAA. 747 F.3d at 719. Noting that it was "[m]indful that the FAA does not preempt all state law tort actions touching air travel," the court found that the claims were "little more than backdoor challenges to [the airline's] safety-related decisions regarding . . . [the] physical and mental fitness to operate civil aircraft" of the plaintiff and the pilot about whom he complained. The claims were thus preempted. *Id*. at 719, 722 (citing *Martin*, 555 F.3d at 809). The court noted that the plaintiff's claims would require the factfinder to examine the pilots' medical fitness and the reasons for the plaintiff's termination, and concluded that "[t]his inquiry . . . intrudes upon the federally occupied field of pilot safety and qualifications that Congress has reserved for the [Federal Aviation Administration]" and "interferes with the agency's authority to serve as the principal arbiter of aviation safety." *Ventress*, 747 F.3d at 722. The court held that "federal law preempts state law claims that encroach upon, supplement, or alter the federally occupied field of aviation safety and present an obstacle to the accomplishment of Congress's legislative goal to create a single, uniform system of regulating that field." 747 F.3d at 722-23.

Neither *Montalvo*, *Martin* nor *Ventress* addressed whether section 44902(b) preempts state law claims based upon an airline's refusal to transport a passenger who may be "inimical to

safety."  However, in *Shaffy v. United Airlines, Inc.*, 360 Fed. Appx. 729, 730-31 (9th Cir. 2009), the Ninth Circuit affirmed summary judgment of state law claims on the ground that section 44902(b) preempted the claims.  The plaintiff in *Shaffy* brought state law race discrimination and tort claims challenging her removal from a flight after the flight captain determined that she and her dog posed possible risks to safety.  The court held that the plaintiff's state law claims were preempted since they "directly implicate[d] the decision by [the airline] to remove her from the flight for safety reasons."  *Id.* at 731.  Following *Ventress* and *Shaffy*, the court in *Register v. United Airlines, Inc.*, No. 16-CV-2480 W (BGS), 2017 WL 784288, at *2 (S.D. Cal. Mar. 1, 2017), held that "[t]he FAA preempts all state law impinging upon the circumstances under which an air carrier may remove a passenger from a flight for safety reasons."  (citing 49 U.S.C. § 44902(b); *Ventress*, 747 F.3d at 721-22).  In *Register*, the court held that state law claims based on the plaintiff's removal from a flight following an altercation with a flight attendant were preempted by section 44902(b) since they "necessitate[d] an inquiry into the federally occupied field of flight safety, specifically the circumstances under which an air carrier may remove a passenger for safety reasons."  *Id.* at *3 (citations omitted).

According to Ahmed, section 44902(b) preempts Makzhoomi's state law claims because the allegations in the complaint demonstrate that his removal from the flight was based on safety concerns.  Specifically, Ahmed argues that Makzhoomi admits that "he was speaking in Arabic about the Islamic State" and that he was the subject of a complaint.  Makzhoomi also alleges that police officers escorted him off the plane, that he was subsequently interrogated by the FBI, and that "Southwest became aware that [he] was actually not a threat" after he was "cleared."  Compl. ¶¶ 17-18, 19, 30, 32, 53, 66.  Therefore, Ahmed argues, safety played a role in Makzhoomi's removal from the plane, and his state law claims are accordingly preempted by the FAA.

Makhzoomi responds that his removal from the plane was not for safety reasons, but instead was the product of discrimination because he "appeared to be Middle Eastern or Muslim." *See* Compl. ¶ 48.  He argues that he was removed "because he looked a certain way and spoke a particular language so was immediately stereotyped."  He asserts that "[s]peaking in Arabic cannot justifiably be deemed a safety threat."  Opp'n 4, n.1.  Makhzoomi also argues that Ahmed "did not

ask any safety-related questions or any questions at all" relevant to whether Makhzoomi posed a safety threat, and that the complaint contains no allegations that Makhzoomi was acting in a manner that was inimical to safety. *Id.* at 4-5.

In support of preemption, Ahmed cites *Shaffy*, *Register*, and *Mercer v. Southwest Airlines Co.* ("*Mercer I*"), No. 13-cv-05057-MEJ, 2014 WL 4681788, at *5 (N.D. Cal. Sept. 19, 2014. In *Mercer I*, the plaintiff alleged that an airline had removed him from a flight due to racial discrimination and brought state law claims of negligence and intentional infliction of emotional distress, along with claims based on federal law. *Id.* at *2. The court found that the key question for preemption of the state claims based on Section 44902(b) was "whether Plaintiff's claims directly implicate[d] airline safety," and answered the question in the affirmative. Specifically, the plaintiff alleged that he "was explicitly told by a member of the flight crew that 'the Captain . . . did not want [P]laintiff on the aircraft as he considered [P]laintiff to be a security threat.'" *Id.* at *5 (quotation omitted). The court concluded that "because safety was the apparent basis for [the plaintiff's] removal from the flight, the event out of which the tort claims arise," the state law claims were preempted. *Id.* Noting that the plaintiff discounted the statement that he was a security threat as pretext for intentional discrimination, the court held that "whether or not the captain was correct in his belief that Plaintiff posed a security threat, the fact that the safety of the flight was in question at the time Defendant acted is what is relevant to this analysis." *Id.*[3]

This case is distinguishable from *Mercer I* and *Register*, where both plaintiffs alleged that airline personnel made contemporaneous statements related to safety in connection with the

---

[3] In response, Makzhoomi cites to *Mercer v. Southwest Airlines Co.* ("*Mercer II*"), No. 13-cv-05057-MEJ, 2014 WL 7206881, at *4 (Dec. 18, 2014) for the proposition that pilots and airline personnel are not "afforded unfettered discretion" to remove passengers under the pretext of flight safety, and that an airline's decision to remove a passenger must not be "arbitrary and capricious." However, *Mercer II* is not on point. The issue in *Mercer II* was whether Section 44902(b) preempted a claim brought pursuant to another federal statute, 42 U.S.C. § 1981. The court noted that even though airlines have discretion to refuse to transport passengers for safety reasons, "such discretion is not 'a license to discriminate.'" *Id.* It held that section 44902(b) did not preempt the plaintiff's section 1981 discrimination claim. *Id.* As previously noted, Defendants have not moved to dismiss Makhzoomi's section 1981 claim.

plaintiffs' removal from their flights. *See Mercer*, 2014 WL 4681788, at *5 (plaintiff told that the captain considered him "to be a security threat"); *Register*, 2017 WL 784288, at *3 ("captain made an announcement regarding a situation on the plane"). There are no such allegations here. Essentially, Ahmed asks the court to infer from the allegations in the complaint that because Makhzoomi was the subject of an unspecified "complaint," safety concerns must have played a role in his removal from the flight. The court concludes that it is premature to do so at this time. As another court observed, "it is difficult to resolve the preemption issue without discovery and a clear understanding of what the facts actually are." *Chowdhury v. Northwest Airlines Corp*., 238 F. Supp. 2d 1153, 1157 (N.D. Cal. 2002). This will not result in an undue waste of resources, as the case will be moving forward on the two unchallenged federal claims against Southwest. The inclusion of the state law claims will not impact the scope of discovery, since they are based on the same events as the federal claims. Accordingly, the court denies the motion to dismiss the state law claims based on FAA preemption, without prejudice to renewal of the preemption argument, if appropriate, after the facts have been sufficiently developed.

### 2.    Title VI Race Discrimination Claim

Makhzoomi's second claim is for violation of 42 U.S.C. § 2000d, which provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Ahmed moves to dismiss this claim on the ground that Makhzoomi has not alleged and cannot allege that Ahmed received "[f]ederal financial assistance" within the meaning of the statute. He argues that only entities receiving federal financial assistance may be liable under Title VI, and not individual employees of such entities.

The parties agree that there is no Ninth Circuit decision addressing whether Section 2000d claims may be brought against individuals who are employees of federal grant recipients. *See Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 978 n.7 (9th Cir. 2004) (declining to reach the question of whether programs that receive federal funding, rather than individual defendants, are the proper defendants in a Title VI suit). However, courts in the Ninth Circuit have held that in

order to state a race discrimination claim under Title VI, a plaintiff must allege that "(1) the defendant entity involved is engaging in racial discrimination; and (2) the entity involved is receiving federal financial assistance." *Drawsand v. F.F. Props., LLP*, 866 F. Supp. 2d 1110, 1122 (N.D. Cal. 2011). Accordingly, "[i]n a Title VI claim, the proper defendant is the entity receiving federal funds, not the employees who are employed by the entity." *Id.* (citing *Shotz v. City of Plantation*, 344 F.3d 1161, 1169-70 (11th Cir. 2003)); *see also Astre v. McQuaid*, No. 3:18-CV-00138-WHO, 2018 WL 2215832, at *5 (N.D. Cal. May 15, 2018) ("[g]iven the requirement that the entity involved is receiving federal financial assistance, '[i]t is beyond question . . . that individuals are not liable under Title VI.'" (quoting *Shotz*, 344 F.3d at 1171)); *Santos v. Merritt Coll.*, No. C-07-5227 EMC, 2008 WL 2622792, at *2 (N.D. Cal. July 1, 2008) (dismissing Title VI claim against individual defendant). The court finds this authority persuasive and concludes that individuals may not be held liable for violations of Title VI. Accordingly, Makhzoomi's Title VI claim against Ahmed is dismissed with prejudice.

### 3. Intentional Infliction of Emotional Distress

Finally, Ahmed moves to dismiss Makhzoomi's claim for intentional infliction of emotional distress, arguing that he has not plausibly alleged that the alleged conduct was outrageous or that he suffered the type of severe emotional distress necessary to support the claim.

"To recover for intentional infliction of emotional distress a plaintiff must show: (1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional distress." *McDaniel v. Gile*, 230 Cal. App. 3d 363, 372 (1991). Courts have emphasized that extreme and outrageous conduct is conduct that "go[es] beyond all possible [bounds] of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community." *Mintz v. Blue Cross of Cal.*, 172 Cal. App. 4th 1594, 1608 (2009) (quotation omitted). "With respect to the requirement that the plaintiff show severe emotional distress [for an IIED claim]," the California Supreme Court "has set a high bar." *Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009). "Severe emotional distress means emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to

9

endure it." *Id.* (citation and internal quotation marks omitted).

Makhzoomi has sufficiently pleaded a claim for intentional infliction of emotional distress. He alleges that without inquiry or investigation, he was removed from a flight by law enforcement officers in front of other passengers, "aggressively patted down and invasively searched in front of a crowd of onlookers," and interrogated by the FBI for hours, solely "for speaking in Arabic on an airplane." Compl. ¶¶ 19, 26, 28, 30-32. These allegations are sufficient to plead outrageous conduct by Defendants. Moreover, he alleges that he has suffered severe emotional distress as a result of Defendants' actions:

> [Makhzoomi] has suffered from long lasting shock; trauma; stigmatization; severe mental and emotional distress; embarrassment; public humiliation; damage to his personal and professional reputation; anxiety; insecurity; sleeplessness; fear and apprehension associated with airports and flying; and immense pressure to look and act a certain way so to camouflage his identity, including feeling the need to shave his beard prior to flying and to not travel with his Arabic studies books.

Compl. ¶ 101. The court concludes that these allegations are sufficient to plead emotional distress "of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." *Hughes*, 46 Cal. 4th at 1051. Ahmed's motion to dismiss the intentional infliction of emotional distress claim is denied.

## III. SOUTHWEST'S MOTION FOR JUDGMENT ON THE PLEADINGS

### A. Legal Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings "challenges the legal sufficiency of the opposing party's pleadings." William Schwarzer et al, *Federal Civil Procedure Before Trial* ¶ 9:316 (2014). "Rule 12(c) is functionally identical to Rule 12(b)(6) and . . . the same standard of review applies to motions brought under either rule." *Cafasso, U.S. ex rel. v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). Thus, a judgment on the pleadings is appropriate when the pleaded facts, accepted as true and viewed in the light most favorable to the non-moving party, entitle the moving party to a judgment as a matter of law. *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1301 (9th Cir. 1992); *see also Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

### B. Discussion

Southwest moves for judgment on the pleadings on claims three through five. It argues that Makhzoomi's state law claims are preempted by the FAA. It also argues that the claim for intentional infliction of emotional distress is insufficiently pleaded. For the reasons set forth above, the court denies the motion for judgment on the pleadings on the basis of preemption without prejudice. The court also denies the motion to dismiss Makhzoomi's claim for intentional infliction of emotional distress for the reasons stated above.

## IV. CONCLUSION

For the foregoing reasons, Ahmed's motion to dismiss is granted in part and denied in part. Makhzoomi's Title VI claim against Ahmed is dismissed with prejudice. Southwest's motion for judgment on the pleadings is denied.

**IT IS SO ORDERED.**

Dated: August 14, 2018



Donna M. Ryu
United States Magistrate Judge